The children of Lowell Becraft, Sr. ("Dr. Becraft"), opposed the petition by their stepmother, Elizabeth Becraft, for an omitted spouse's share of Dr. Becraft's estate, Ala. Code 1975, § 43-8-90. The Madison County Probate Court granted Elizabeth's petition, and Dr. Becraft's children have appealed. The issues stated by the children are:
 "(1) Is the judgment of the Probate Court granting the petition of Elizabeth Becraft for an omitted spouse share of this estate contrary to the great weight and preponderance of the evidence?
 "(2) Did the Probate Court err as a matter of law in concluding that the sole manner of proving a section 43-8-90 defense is by showing the execution of a new Will, codicil, pre- or post-nuptial agreement?
 "(3) Did the Probate Court err as a matter of law in concluding that any transfer under section 43-8-90 must approximate or equal the amount the surviving spouse would otherwise take under this statute?
 "(4) Did the Probate Court err in considering facts outside the record of this case in making its decision to grant Elizabeth the omitted spouse share?"
Dr. Becraft was married to Barbara Becraft until Barbara's death in 1985. They had four children, one of whom died without issue. Dr. Becraft had executed a will, in 1984, leaving his entire estate to Barbara or, if she failed to survive him, to their children. After Barbara's death, Dr. Becraft married Elizabeth and remained married to her until his death seven months later. His three surviving children filed his 1984 will for probate, whereupon Elizabeth filed a petition for an omitted spouse's share, pursuant to § 43-8-90.
Section 43-8-90(a) provides:
 "If a testator fails to provide by will for his surviving spouse who married the testator after the execution of the will, the omitted spouse shall receive the same share of the estate he would have received if the decedent left no will unless it appears from the will that the omission was intentional or the testator provided for the spouse by transfer outside the will and the intent that the transfer be in lieu of a testamentary provision be reasonably proven."
Dr. Becraft made Elizabeth the beneficiary of a $25,000 insurance policy on his life, and the children argue that Dr. Becraft intended this benefit to be in lieu of a testamentary provision. All three children testified that Dr. Becraft had stated many times that he and Barbara intended their estate to pass to their children. They argue that Dr. Becraft's brief marriage to Elizabeth, a much younger woman, should not disturb this estate plan. Elizabeth testified that she and Dr. Becraft did not have an agreement that the aforementioned life insurance policy was to be her share of his estate, and she generally contradicted the children's testimony as to Dr. Becraft's plans for his estate.
Dr. Becraft's children argue first that the judgment granting Elizabeth's petition for an omitted spouse's share of their father's estate is contrary to the great weight and preponderance of the evidence. Under the ore tenus rule, "a presumption of correctness exists as to the court's findings of fact; its determination will not be disturbed unless it is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence." CoveCreek Development Corp. v. APAC-Alabama, Inc., *Page 406 588 So.2d 458, 461 (Ala. 1991); Arzonico v. Wells, 589 So.2d 152
(Ala. 1991).
Elizabeth Becraft had the initial burden to show her eligibility as an "omitted spouse." The parties stipulated that Dr. Becraft had executed his will before he married Elizabeth, that Elizabeth was not mentioned in the will, and that they remained married until Dr. Becraft's death. Elizabeth thus established a prima facie case for an omitted spouse's share of Dr. Becraft's estate.
To overcome this prima facie showing, the children must reasonably prove both that Dr. Becraft provided for Elizabeth by gift outside the will and that he intended this gift to be in lieu of a testamentary gift.[1] Hellums v. Reinhardt,567 So.2d 274 (Ala. 1990). It is undisputed that Elizabeth was the beneficiary of a $25,000 life insurance policy. The only question is whether the court erred in holding that the children did not reasonably prove that Dr. Becraft intended the insurance proceeds to be in lieu of a testamentary gift.
The evidence presented by both sides to establish Dr. Becraft's intent consists of testimony by interested witnesses. Weighing this evidence, the court determined that Dr. Becraft's children had not carried their burden of showing that the insurance policy was given in lieu of a testamentary gift. The children's testimony that Dr. Becraft told them he intended his estate to go to them is controverted by Elizabeth's testimony. The judge considered this evidence and the circumstances surrounding Dr. Becraft's marriage and death. As we will discuss below, the judge stated that Dr. Becraft was an intelligent, educated man who could be presumed capable of properly looking after his affairs, and that his failure to expressly provide that the life insurance policy was a gift in lieu of a testamentary provision militated against the conclusion that he intended it to be such. Viewing the record as a whole, and in light of the conflicting testimony, we cannot say that the judgment granting Elizabeth an omitted spouse's share was contrary to the great weight of the evidence.
The next three issues are based on the following remarks by the probate judge at the conclusion of the hearing on Elizabeth's petition:
 "Several points were made about the intent. I want to reiterate the point Mr. Butler made that all of us who knew Dr. Becraft, knew him to be a very intelligent person. I've been to him for treatment and my wife has, also; not treatment but glasses.
 "And it's the opinion of the Court since he had a son who was an attorney and he had a son-in-law who was an attorney, it's hard for me to realize that, particularly Larry Becraft, would not have advised his father and tried to convince him that either a codicil should have been made, the will should have been redrawn, or there should have been a prenuptial agreement. There's no question in my mind that that should have been done and he would have done that had he really intended to make this provision and keep the family out of a squabble.
 "There was no change in the will. He had ample time to do that. All these discussions about providing for his wife outside the will and that the children would get the estate, all of this took place before he became sick. He was sick only a short period of time. There must have been, from the testimony here, at least seven or eight times the subject was discussed. He had ample time to say, 'Larry, what do you think?' or for Larry to have had an opportunity to say, 'Dad, you need to get a codicil. You need to get a prenuptial agreement. You need it in writing. It may go to Court.' That was never done. So I don't have any other choice but to say that he did not provide for her outside the will. He provided her some but I don't think he provided her as much as the Code intended it to do [sic]. And based on that, I'm going to rule that the petition be granted and that she be given an omitted spouse share." *Page 407 
The children contend, in support of their position on the second issue, that the court held that the only defense to a petition for an omitted spouse's share is a showing that the testator executed either a new will, a codicil, or a prenuptial agreement, and they argue that, in so holding, the court erred. We do not read the court's remarks as reflecting such a holding. Rather, the court recited those possibilities simply as examples of how Dr. Becraft could have expressed in writing an intention to provide for Elizabeth outside the will. The court did not err in considering Dr. Becraft's failure to establish in writing that he intended the insurance benefits to be in lieu of a testamentary provision for Elizabeth as a factor weighing on the question whether Dr. Becraft had such an intent.
On the third issue, the children argue that the court held that a gift outside the will must approximate or equal in value the amount the surviving spouse would have received under the Code, see § 43-8-41, and erred in so holding. This argument is based on the following language: "He [Dr. Becraft] provided her [Elizabeth] some but I don't think he provided her as much as the Code intended it to do [sic]." The purpose of §43-8-90 is to prevent the unintentional disinheritance of surviving spouses. As the committee comments state: "This section reflects the view that the intestate share of the spouse is what the decedent would want the spouse to have if he had thought about the relationship of his old will to the new situation." The size of an inter vivos gift or one that passes outside the estate in relation to the intestate share is relevant to the question of whether the gift was intended as being in lieu of a testamentary provision, and we do not view the court's remark as absolutely requiring that an inter vivos or extra-estate gift be equal to or approximately the same as an intestate share to qualify as a gift in lieu of a testamentary provision.
Finally, the children argue that the court erred by considering facts outside the record in deciding to grant Elizabeth an omitted spouse's share. The judge did mention having known the decedent as an intelligent person, but he was simply "reiterat[ing] the point [Elizabeth's attorney] made." There is no indication that the judge's findings and conclusion were influenced improperly by his acquaintance with the decedent. The judge based his decision on the evidence, and the judgment is sustained by the record.
For the foregoing reasons the judgment is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and ADAMS, STEAGALL and INGRAM, JJ., concur.
[1] There is no contention that "it appears from the will" that Dr. Becraft intentionally omitted Elizabeth as a beneficiary of his estate.