ALMON, Justice.
Mary F. Kellam, as personal representative of the estate of Clebert M. Kellam (Cle-bert), appeals from a judgment in favor of the defendant, George G. Dutton, as executor of the estate of Alice Curtis Kellam (Alice), deceased.[1] Clebert filed a petition against Alice’s estate seeking the share of an omitted spouse and other benefits. The issue is whether, notwithstanding a prenuptial agreement, Clebert was entitled, under § 43-8-90, Ala.Code 1975, to a share of Alice’s estate as a surviving spouse omitted from her will, which she had executed before their marriage.
After a nonjury trial, the circuit court entered the following judgment:
*1180 “This case was tried on the stipulation of ■ facts and evidence presented ore terms on April 30, 1996. At the request of the plaintiffs attorneys, the Court directed the Court Reporter to prepare a transcript of the April 30 hearing and gave the attorneys additional time after completion of the transcript to submit briefs and legal authorities. While the case was under submission, the plaintiff, Clebert Kellam, died on June 25, 1996. The Court, having reviewed the suggestion of the plaintiffs death, held a ruling in abeyance until it became apparent whether or not a proper party would be substituted in this action for the deceased plaintiff. On December 19, 1996, Mary F. Kellam, who had been appointed personal representative of the estate of Clebert M. Kellam, deceased, timely filed a motion to be substituted as a party plaintiff in this action. Having considered said motion, the Court is of the opinion that the same should be granted, and it is ORDERED that Mary F. Kellam, as personal representative- of the estate of Clebert M. Kellam, deceased, be and hereby is substituted as the plaintiff in this action.
“The submitted issues now being ready for adjudication and the Court having considered all of the evidence admitted during trial, the following findings and conclusions are made:
“Alice Curtis had been twice married before agreeing to marry Clebert Kellam. Her last marriage resulted in a bad experience when her husband absconded with funds she had placed in joint accounts or certificates of deposit. Alice made a will dated December 26, 1988, in which she appointed the defendant, George G. Dut-ton, as executor and left her residual estate to him and his-wife.
“Alice and Clebert executed and acknowledged a Pre-Nuptial Agreement (‘the Agreement’) on December 13, 1991. The Agreement was prepared by Alice’s attorney. He discussed it with them over a period of time and told Clebert that he could not represent him in connection with the Agreement and that he should get other legal advice. Alice came to the attorney’s office by herself on December 13, went over the Agreement and executed it. Clebert came by later the same day and signed the Agreement.
“Clebert and Alice married the next day, December 14, 1991. They remained married until Alice’s death on January 21, 1994. There is undisputed evidence that they kept their money and business affairs separate from one another, with Alice paying the household and living expenses. Alice prepared no new will during her marriage. Before her death, she told the defendant that someone was going to have to look after Clebert. The defendant responded that he would make sure that Clebert was looked after, meaning that he would see that someone would get Clebert to the doctor, stay with him and help him with his business matters.
“The Morgan County Probate Court admitted Alice’s will to probate on April 14, 1994. Clebert filed a petition against her estate in the Probate Court seeking the share of an omitted spouse, as well as claims for an elective share, homestead and homestead allowance, exempt property and family allowance. He also requested that a trust be established from Alice’s estate to provide for his medical care, daily needs and living expenses. After the estate was removed to this Court, Clebert amended his petition to add tort claims against the defendant based upon acts which allegedly occurred before Alice’s death. The defendant has filed a motion to strike those claims.
“I. Tort Claims Against the Defendant, George G. Dutton:
“The plaintiff initially filed his claims in the Probate Court against the estate of Alice Curtis Kellam, deceased. The defendant’s only involvement in this case is as executor of her will and personal representative of her estate. The plaintiff has never sought to add George G. Dutton, individually, as a party defendant. Therefore, the defendant’s motion to strike the tort claims against him in his individual capacity is due to be granted. Moreover, there is no credible evidence to substantiate the plaintiff’s claims of wrongdoing against the *1181 defendant either individually or as personal representative of Alice Kellam’s estate.
“II. Validity of Pre-Nuptial Agreement:
“It is undisputed that both Alice and Clebert signed the Agreement the day before they married. The acknowledgments reflect that each was informed of the Agreement’s contents and signed it voluntarily. Each of them signed or initialed the extensive disclosure of assets appended to the Agreement as schedules A and B. The evidence is also undisputed that Cle-bert, without legal representation, entered into a property settlement agreement with his former wife, Mary Kellam, about a month before executing the Agreement. There is no credible evidence that he was illiterate or unable to understand the contents of the Agreement and the consequences of signing it.
“As consideration for the Agreement, Alice and Clebert agreed to marry and to each release the estate and properties of the other from any claims that would normally arise upon death or divorce. The marriage in fact occurred the day after each signed the Agreement. Under these particular circumstances, the consideration for each to enter into the Agreement was adequate.
“Before [Clebert] executed the Agreement, Alice’s attorney advised Clebert to obtain independent counsel. Despite that advice, the Agreement expressly recited that he freely, voluntarily and with full knowledge waived that opportunity. There is no evidence that anyone unduly forced or pressured Clebert to sign, or that he was reluctant to do so. Although Alice’s disclosure of the value of her real estate may have been overstated, her disclosure nonetheless was thorough. By examining her disclosure, Clebert clearly would have known the extent of her property holdings, even if harmlessly overstated in terms of value. In all respects, the Agreement is complete and thorough. Given Alice’s concerns arising from her previous marriage, it was reasonable for her to insist upon the existence of a valid pre-nuptial agreement between her and Clebert. The entire transaction was fair, just and equitable from Clebert’s point of view. Therefore, the Agreement is valid under the first prong of the test established in Barnhill v. Barnhill, 386 So.2d 749 (Ala.Civ.App.1980).
“HI. Revocation of Pre-Nuptial Agreement:
“Before her death Alice told the defendant that someone was going to have to look after Clebert after she died. The defendant responded that he would see to it that [Clebert’s] needs were met. According to the defendant’s uncontradicted testimony, Alice did not state that the defendant should take care of Clebert for the rest of his life. Nor did the defendant tell her or agree that he would take care of Clebert for the rest of his life.
“The vague statement by Alice that someone needed to look after Clebert did not evidence an intent to revoke or modify the Agreement. In fact, the Agreement specifically provides that it ‘shall not be modified or amended in any manner, except by an instrument in writing signed by both parties.’ Neither Alice nor Clebert signed such a writing, and it is undisputed that Alice neither changed her will nor signed an instrument purporting to revoke the Agreement. Accordingly, there was no revocation of the Agreement and no creation of an agreement or trust to provide for Clebert’s lifetime maintenance and support.
“IV. Effect of Pre-Nuptial Agreement on Omitted Spouse and Other Statutory Rights:
“Alice’s 1988 will made no provision for Clebert. After their marriage, she made no change in her will to state that she intended to exclude her husband from receiving any portion of her estate. The parties agree that Clebert is an ‘omitted spouse’ as [that term is] defined in § 43-8-90, Code of Alabama 1975. According to our Supreme Court in Becraft v. Becraft, 628 So.2d 404 [at 407] (Ala.1993), the purpose of this section ‘is to prevent the unintentional disinheritance of surviving spouses.’ Consistent with this ruling is the Code Commentary [following § 43-8-90,] which states that ‘[t]his section reflects the *1182 view that the intestate share of the spouse is what the decedent would want the spouse to have if he had thought about the relationship of his old will to the new situation’ (emphasis added). Once a spouse is shown to be an omitted spouse, the burden shifts to the proponent of the will to prove that the testator intended to make [a]n inter vivos transfer to the omitted spouse in lieu of a testamentary provision. Hellums v. Reinhardt, 567 So.2d 274 (Ala.1990).
“The apparent first-impression question presented in this case is whether or not the Pre-Nuptial Agreement entered into between Alice and Clebert before their marriage, but after she executed her 1988 will, effectively waived or released the husband’s .claim to an intestate share of her estate as an omitted spouse. ' The answer to this question also requires the resolution of an apparent conflict between § 48-8-90 and § 43-8-72, Code of Alabama 1975. The latter section expressly provides that ‘a waiver of “all rights” (or equivalent language) in the property or estate of a present or prospective spouse ... is a waiver of all rights to elective share, homestead allowance, exempt property and family allowance by each spouse in the property of the other at death and [a] renunciation by each of all benefits which would otherwise pass to him from the other by intestate succession-’ (Emphasis added.) According to the Code Commentary, it is desirable to permit a prospective spouse to waive all statutory rights in the other spouse’s property in view of the common desire of parties to second and later marriages to assure that property derived from prior spouses pass at death to relatives of the prior spouses instead of to the newly acquired spouse.
“The Agreement executed by Alice and Clebert expressly states the following [in Paragraph 10]:
“ ‘By executing this'Agreement and accepting the provisions hereof in lieu of his or her normal entitlements, each party shall and does hereby waive, release, renounce and disavow all rights, powers, privileges, benefits, claims, demands, interests and entitlements of whatsoever kind, nature, character or source, which he or she might otherwise acquire by reason of the contemplated marriage of the parties, in the separate properties and assets owned by the other, whether or not accruing during the lifetime or upon the death of the other spouse, including but not limited to [emphasis added by circuit court] the following:. ...’
“The Agreement then lists specifically elective share, right of election, homestead, homestead allowance, exempt property, family allowance, right to dissent from the other spouse’s will, right to administer the other spouse’s estate and ‘[a]ll rights, titles, interests and claims in and to the separate property and estate of the [o]ther spouse, except as herein provided.’ No exception is made in the Agreement to preserve an omitted spouse’s right to an intestate share of the deceased spouse’s estate.
“Although the statutory right of an omitted spouse is not expressly reeited in the Agreement as being waived and released, the waiver specifically states that the affected rights and entitlements were not limited to those listed. The waiver and release in Paragraph 10 twice states that it applies to ‘all rights’ which, according to § 43-8-72, Code, constitutes a renunciation of all benefits which would otherwise pass to one spouse from another by intestate succession. Since the omitted spouse statute provides for the surviving spouse to receive an intestate share of the decedent’s estate, the reference in the Agreement to ‘all rights’ necessarily includes, in the Court’s opinion, the waiver and release of the rights of an omitted spouse under § 43-8-90.
“The Court cannot imagine a more thorough and comprehensive waiver and release of a spouse’s rights than is set forth in the Agreement between Alice and Cle-bert. However, the issue is clouded by the Heliums ruling that an omitted spouse is entitled to his share unless the will proponent proves that the testator intended an inter vivos transfer to be a substitute for a testamentary provision. Does the Agree *1183 ment in this instance, which contains a valid waiver and release of an omitted spouse’s statutory share, constitute sufficient proof, in and of itself, that Alice intended an inter vivos transfer in lieu of making provision for Clebert [in] her will?
“When Alice and Clebert signed and delivered the Agreement to each other, they effectively transferred away all rights in or to their separate estates and properties, except to the extent provided therein. Each gave to the other something of value — surrender, of the right to claim and have a portion of that spouse’s estate at his or her death. The Agreement also provided a means in Paragraph 7 by which the parties during their marriage could make gifts and establish joint ownership without revoking or modifying it.
“In the Court’s opinion, the execution and delivery of the Agreement by Alice and Clebert, conditioned upon their future marriage, constituted an inter vivos transfer which clearly was intended to be a substitute for either spouse’s making provision for the other in their respective wills. This is the only reasonable interpretation which allows a reconciliation between the respective intents of § 43-8-90 and § 43-8-72, Code. Since the purpose of the former statute is to prevent unintentional disinheritance by providing an intestate share to an omitted spouse, a thorough pre-nuptial agreement which clearly intends to waive and release either spouse’s right to an intestate share of the other’s estate does not frustrate that purpose. Such an agreement also is consistent with the latter statute which expressly provides for the waiver and release of all benefits which otherwise would accrue to a spouse by intestate succession. To rule that a valid pre-nuptial agreement can never effectively waive and release the share of an omitted spouse, as the plaintiff would have the Court do in this case, would defeat the intent of § 43-8-72. Such a ruling would vitiate the intentions of the parties, regardless [of] how clearly expressed, by allowing both accidentally and intentionally omitted spouses to have an intestate share of the deceased spouse. This certainly would expand the scope of § 43-8-90 beyond its intended purpose, at the expense of shrinking the intended application of § 43-8-72.
“For the reasons discussed above, the Court concludes that by entering into the Agreement with Alice, Clebert effectively waived and released any right he had to receive an omitted spouse’s share of her estate, as well as any right to elect against the will or to receive an elective share, homestead and homestead allowance, family allowance and exempt property.”
Alabama Code 1975, § 43-8-90, provides that an omitted spouse is to receive an intestate share from the estate of the decedent “unless ... the testator provided for the spouse by transfer outside, the will and the intent that the transfer be in lieu of a testamentary provision be reasonably proven” (emphasis added). We hold that, under these circumstances, the waiver and release in the prenuptial agreement of “all rights” is valid and that the waiver includes the rights of an omitted spouse. As the circuit court held, the prenuptial agreement is the vehicle of transfer, outside the will, of Alice and Clebert’s respective claims to each other’s estates, and it constitutes sufficient proof of Alice’s intent that that inter vivos transfer be in lieu of making provision for Clebert in her will. See, generally, Becraft v. Becraft, 628 So.2d 404 (Ala.1993), and Hellums v. Reinhardt, 567 So.2d 274 (Ala.1990).
Section 43-8-2(a) instructs that Chapter 8 of Title 43 is to be “liberally construed and applied to promote its underlying purposes and policies.” In this case, the circuit court’s construction of the applicable statutes serves to promote their purposes and policies. We see no error in the circuit court’s judgment. Therefore, the judgment is due to be affirmed.
AFFIRMED.
HOOPER, C.J., and HOUSTON, COOK, and SEE, JJ., concur.

. Dutton is Alice’s nephew.